YAR R. CHAIKOVSKY (CA Bar No. 175421)
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
Telephone:    650.815.7400
Facsimile:    650.815.7401
E-mail: ychaikovsky@mwe.com

CHRISTOPHER D. BRIGHT (CA Bar No. 206273)
McDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Telephone:    949.851.0633
Facsimile:    949.851.9348
E-mail: cbright@mwe.com

Attorneys for Plaintiff
TREND MICRO INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TREND MICRO INCORPORATED, a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WHITECELL SOFTWARE, INC., a Delaware corporation,<br><br>　　　　　Defendant. | CASE NO.  C 10-02248 WHA<br><br>JUDGE: HON. WILLIAM H. ALSUP<br><br>TREND MICRO INCORPORATED'S OPPOSITION TO DEFENDANT WHITECELL SOFTWARE INC.'S MOTION TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT<br><br>**FILED PARTIALLY UNDER SEAL** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. The Case Should Proceed Against WhiteCell Because WhiteCell Cannot Evade this Court's Jurisdiction by Transferring the Patent-In-Suit ........................ 2

        1. This Court Had Jurisdiction Over the Subject Matter of this Case When Trend Micro Filed Its Complaint ......................................................... 2

        2. Rule 25(c) Allows Trend Micro to Continue Its Case Unabated ................ 4

    B. The Case Should Proceed Against Fortinet ............................................................ 6

        1. The Court Can Substitute Fortinet for WhiteCell or Join Fortinet as a Defendant Under Rule 25(c) ..................................................................... 6

        2. The Covenant Not to Sue Between Trend Micro and Fortinet Does Not Create a Jurisdictional Loophole ........................................................... 7

            a. There Is a Case or Controversy Between Trend Micro and Fortinet for Purposes of Declaratory Judgment Jurisdiction ........... 7

            b. The Prior Covenant Not to Sue Does Not Affect the Merits of this Case Because Fortinet Steps into the Shoes of WhiteCell ....................................................................................... 10

    C. At the Least, WhiteCell and Fortinet Should Execute *Super Sack* Unconditional and Irrevocable Covenants Not to Sue Trend Micro .................... 10

III. CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITY
## FEDERAL CASES

| | Page |
|---|---|
| *Matter of Covington Grain Co.*, 638 F.2d 1362 (5th Cir. 1981) | 5 |
| *Dainippon Screen Mfg. Co. v. DNS Electronics, LLC*, 142 F.3d 1266 (Fed. Cir. 1998) | 6 |
| *Freeport-McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426 (1991) | 5, 6 |
| *Gen. Battery Corp. v. Globe-Union, Inc.*, 100 F.R.D. 258 (D. Del. 1982) | 4 |
| *King Pharms., Inc. v. Eon Labs., Inc.*, 2010 WL 3001333 (Fed. Cir. Aug. 2, 2010) | 3 |
| *Md. Cas. Co. v. P. Coal & Oil Co.*, 312 U.S. 270 (1941) | 8, 9 |
| *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) | 3, 7 |
| *Minn. Mining & Mfg. Co. v. ECO Chem., Inc.*, 757 F.2d 1256 (Fed. Cir. 1985) | 5, 10 |
| *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329 (Fed. Cir. 2008) | 3 |
| *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294 (Fed. Cir. 2009) | 7, 8, 9 |
| *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971 (Fed. Cir. 2005) | 3 |
| *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) | 10 |

## FEDERAL RULES

| | |
|---|---|
| FED. R. CIV. P. 12(h)(1) | 2 |
| FED. R. CIV. P. 25(c) | 2, 4, 5, 6 |

## OTHER AUTHORITY

| | |
|---|---|
| 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE, *Civil 3d* § 1958 (2007) | 4, 6 |

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

## I. INTRODUCTION

The Court had jurisdiction over this case when Trend Micro filed its Complaint for declaratory judgment of noninfringement and invalidity of U.S. Patent No. 7,698,744 (the "'744 patent" or "patent-in-suit") on May 24, 2010. The Court had jurisdiction over this case when WhiteCell purportedly transferred the '744 patent to Fortinet on September 8, 2010. And the Court has jurisdiction over this case now.

In a ploy to evade this Court's jurisdiction, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ WhiteCell assigned the patent-in-suit to Fortinet, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ See Ex.[1] 1 at §§ 1.3, 3.3, and 3.4. What is also peculiar, is that WhiteCell and Fortinet both share the same patent prosecutor – Michael DeSanctis, who prosecutes patents for Fortinet, which is one of Trend Micro's major competitors and litigation adversaries. Mr. DeSanctis prosecuted the patent-in-suit. On the very same day, September 8, 2010, Mr. DeSanctis recorded the assignment of the patent-in-suit to Fortinet, as well as the assignment of Fortinet's '119 patent to WhiteCell. Ex. 2; Ex. 3.

Nevertheless, despite WhiteCell's attempts to evade this Court's jurisdiction and to extricate itself from this case in the face of Trend Micro's noninfringement of the patent-in-suit and invalidating prior art,[2] Federal Rule of Civil Procedure 25(c) and Supreme Court and Federal Circuit precedent allow Trend Micro's case to continue unabated to clear Trend Micro of the patent-in-suit. Not only can the case continue against WhiteCell, but it can also continue against Fortinet, or both WhiteCell and Fortinet. In fact, the most appropriate course is to continue this case against WhiteCell and to add Fortinet to the case so that the issues raised by this case can be resolved with all interested parties involved.

---

[1] "Ex." refers to the Declaration of Christopher D. Bright In Support Of Trend Micro Incorporated's Opposition to Defendant WhiteCell Software Inc.'s Motion to Dismiss Complaint for Declaratory Judgment, filed concurrently herewith.

[2] Under the current case schedule, WhiteCell was supposed to serve its infringement contentions in September 2010, but Trend Micro never received WhiteCell's infringement contentions. Meanwhile, the deadline for Trend Micro's invalidity contentions is quickly approaching in November. Trend Micro cannot submit invalidity contentions until it receives WhiteCell's infringement contentions. Therefore, WhiteCell's delinquency might necessitate motion practice regarding the case schedule, infringement contentions, and invalidity contentions.

Trend Micro's Opposition to WhiteCell's
Motion to Dismiss

Case No. C 10-02248 WHA

WhiteCell argues that there is no longer a case or controversy because WhiteCell no longer owns the patent-in-suit and Fortinet has provided a covenant not to sue Trend Micro until January 27, 2011. *See* Ex. 2 at § 5.1.1. WhiteCell's argument fails. Pursuant to Supreme Court and Federal Circuit precedent, Rule 25(c) allows the case to continue against WhiteCell, Fortinet, or both WhiteCell and Fortinet to dispose of any future threat of the patent-in-suit being asserted against Trend Micro. WhiteCell's focus on Fortinet's prior covenant not to sue is unavailing. WhiteCell has not given Trend Micro a covenant not to sue. There is nothing to stop Fortinet from transferring the patent-in-suit back to WhiteCell and having the parties end up right back before this Court. Moreover, controlling precedent instructs that Fortinet's prior covenant not to sue (which expires in January 2011) does not divest this Court of jurisdiction. Fortinet merely steps into the shoes of WhiteCell for the present litigation. In any event, Fortinet's ability to independently sue Trend Micro is immediate and certain, as Fortinet's covenant not to sue Trend Micro expires in January 2011. Therefore, the Court should deny WhiteCell's motion and allow this case to continue unabated against both WhiteCell and Fortinet, to bring all relevant parties before the Court at the same time and to free Trend Micro from any threat of the patent-in-suit.[3] If this case does not continue unabated, the only way to ensure this case does not come back before this very Court is for both WhiteCell and Fortinet to execute irrevocable and unconditional covenants not to sue Trend Micro for any alleged infringement of the '744 patent.

## II. ARGUMENT

### A. The Case Should Proceed Against WhiteCell Because WhiteCell Cannot Evade this Court's Jurisdiction by Transferring the Patent-In-Suit

#### 1. This Court Had Jurisdiction Over the Subject Matter of this Case When Trend Micro Filed Its Complaint

It is undisputed that the Court had subject-matter jurisdiction over this case when Trend Micro filed its Complaint on May 24, 2010. WhiteCell hides from this fact and instead focuses on September 8, 2010 – the date WhiteCell sought to evade this Court's jurisdiction by assigning

---

[3] WhiteCell's Motion to Dismiss is based on an alleged lack of subject-matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). *See* Dkt. 25 at 1:24-27. Pursuant to Rule 12(h)(1), WhiteCell has waived any defense listed in Rules 12(b)(2)-(5) by not including such defenses in its Motion to Dismiss. *See* FED. R. CIV. P. 12(h)(1) (2010).

Trend Micro's Opposition to WhiteCell's Motion to Dismiss — - 2 - — Case No. C 10-02248 WHA

1  the patent-in-suit to Fortinet.  Perhaps not coincidentally, WhiteCell also fails to disclose that it
2  assigned the patent-in-suit ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
3  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  Regardless of WhiteCell's and Fortinet's
4  choreographed ploy to avoid this Court's jurisdiction, the first point of analysis, is the Court's
5  subject-matter jurisdiction at the outset of this case.

6       On May 24, 2010, WhiteCell owned the patent-in-suit and had threatened both Trend
7  Micro and Trend Micro's customers with litigation.  *See, e.g.*, Dkt. 1 (Complaint) at 32-33
8  (Exhibit B), 37 (Exhibit D), 38-41 (Exhibit E), and 42-45 (Exhibit F).  Therefore, WhiteCell, as
9  the purported owner of the patent-in-suit, had standing to bring a patent infringement suit against
10 Trend Micro.  *See Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).
11 And there was more than a mere specter of suit.  Rather, as WhiteCell recognizes as sufficient to
12 create a "case or controversy" for a declaratory judgment action, there was an "affirmative act by
13 the defendant evidencing a real and immediate injury or threat of future injury such as creating a
14 reasonable apprehension of suit . . . ." Dkt. 25 at 5 (citing *Prasco, LLC v. Medicis Pharm. Corp.*,
15 537 F.3d 1329, 1339 (Fed. Cir. 2008)).  In short, there was a "real and substantial" threat of suit
16 by WhiteCell, thus providing the necessary subject-matter jurisdiction for Trend Micro's
17 declaratory judgment complaint.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127
18 (2007); *Prasco*, 537 F.3d at 1335-36.  WhiteCell does not appear to dispute that the Court had
19 subject matter jurisdiction over this case when Trend Micro filed this declaratory judgment
20 action.  Nor could WhiteCell do so.

21      Instead, WhiteCell relies on *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, 2010 WL
22 3001333, at *14-15 (Fed. Cir. Aug. 2, 2010) to support its argument that the Court now lacks
23 subject-matter jurisdiction over this case because WhiteCell purportedly transferred the patent-in-
24 suit to Fortinet, a third-party.[4]  But *King* is distinguishable in a fundamental respect.  In *King*, the
25 declaratory judgment defendant transferred the patent at issue *before* the complaint was filed.  *See*
26 *id.* at *14 ("According to Elan, it sold all its rights to the '128 and '102 patents *prior* to King

---

[4] It is worth noting that nowhere does WhiteCell submit any evidence that WhiteCell has no future interest in the patent-in-suit.

Trend Micro's Opposition to WhiteCell's Motion to Dismiss     - 3 -     Case No. C 10-02248 WHA

1 filing suit, and therefore the district court lacked jurisdiction to adjudicate the counterclaim.")
2 (emphasis added). Therefore, in *King*, the court never, even at the outset of the case, had subject-
3 matter jurisdiction. Here, however, WhiteCell owned the patent-in-suit when Trend Micro filed
4 its complaint, and there was (and still is) no covenant not to sue between WhiteCell and Trend
5 Micro. Indeed, WhiteCell does not attempt to dispute that this Court had subject-matter
6 jurisdiction over the case when Trend Micro filed suit. *King* is therefore distinguishable and does
7 not compel the Court to grant WhiteCell's motion.

### 2. Rule 25(c) Allows Trend Micro to Continue Its Case Unabated

WhiteCell's argument that Federal Rule of Civil Procedure 25(c) does not allow the case to continue because Fortinet has previously provided a covenant not to sue Trend Micro fails under the very language of Rule 25(c) itself. Rule 25(c) states:

> If an interest is transferred, <u>the action may be continued</u> by or <u>against the original party</u> unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

FED. R. CIV. P. 25(c) (2010) (emphasis added). The rule could not be clearer – Trend Micro's "action may be continued . . . against the original party" despite WhiteCell's purported transfer of interest in the patent-in-suit to Fortinet. Because WhiteCell was the "original party," Trend Micro's declaratory judgment action may continue against WhiteCell.

WhiteCell's argument is based on the assumption that Fortinet will be substituted into this case. But WhiteCell misunderstands Rule 25(c). Fortinet does not have to be substituted into this case in order for the case to continue against WhiteCell. Trend Micro's action continues against WhiteCell *automatically*, and any judgment is binding on Fortinet even though Fortinet is not a named party. *See* 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE, *Civil 3d* § 1958 (2007) ("The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on the successor in interest even though the successor is not named."). As several courts have recognized, "Rule 25(c) is designed to allow an action to continue unabated when an interest in a lawsuit changes hands." *Gen. Battery Corp. v.*

1    *Globe-Union, Inc.*, 100 F.R.D. 258, 261 (D. Del. 1982); *see also Matter of Covington Grain Co.*,

2    638 F.2d 1362, 1364 (5th Cir. 1981).

3          WhiteCell's discussion of Fortinet is, therefore, a red herring. The case can continue

4    against either WhiteCell or Fortinet alone, or against both WhiteCell and Fortinet. As a leading

5    treatise on civil procedure explains:

> An order of <u>joinder is merely a discretionary determination</u> by the trial court that the transferee's presence would facilitate the conduct of the litigation. The court, if it sees fit, may allow the transferee to be substituted for the transferor. It also is free, if it wishes, to retain the transferor as a party and to order that the transferee be made an additional party. In either case, personal jurisdiction and venue will be extended over the successor; it is not necessary to re-establish those requirements. Similarly, it has been held that if diversity jurisdiction was established at the time the complaint was filed, the substitution of a nondiverse party does not destroy jurisdiction. . . . <u>Since the matter is discretionary, the court also may refuse substitution if this seems the wisest course</u>.

12    WRIGHT, *supra*, at § 1958 (emphasis added). Therefore, the Court's decision whether or not to

13    substitute or join Fortinet in this case has no bearing on whether the action may continue. The

14    answer, no matter what the Court decides regarding substitution or joinder, is that Trend Micro's

15    case continues unabated.

16          In this case, however, it is best to join Fortinet as a co-defendant with WhiteCell and to

17    continue against both WhiteCell and Fortinet. By doing so, the Court ensures that all parties who

18    had or now have an interest in the patent-in-suit are at the table and that this case can be fully

19    adjudicated once and for all.

20          Several courts, including the Supreme Court, have held (and treatises confirm) that Rule

21    25(c) allows a case to continue unabated even if substituting or joining the transferee party would

22    destroy subject-matter jurisdiction, such as diversity jurisdiction. *See, e.g.*, *Freeport-McMoRan,*

23    *Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991); *Minn. Mining & Mfg. Co. v. ECO Chem, Inc.*,

24    757 F.2d 1256, 1263 (Fed. Cir. 1985) (discussing *Television Reception Corp. v. Dunbar*, 426 F.2d

25    174 (6th Cir. 1970); WRIGHT, *supra*, at § 1958. For example, in *Freeport-McMoRan*, 498 U.S. at

26    428, the Supreme Court held that where diversity subject-matter jurisdiction was established

27    when the action commenced, the court could not be divested of subject-matter jurisdiction by the

28    substitution of a non-diverse transferee. In so holding, the Court stated, "We have consistently

held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Id.* There is no reason to treat different types of subject-matter jurisdiction differently. Therefore, Rule 25(c) should allow Trend Micro's case to continue unabated just as it would allow the case to continue unabated if subject-matter jurisdiction were originally based on diversity of citizenship.

Moreover, as in cases involving personal jurisdiction, the Court should not allow WhiteCell to evade the Court's jurisdiction by transferring the patent-in-suit to Fortinet. In *Dainippon Screen Manufacturing Co. v. DNS Electronics, LLC*, 142 F.3d 1266, 1271 (Fed. Cir. 1998), the Federal Circuit held that the district court retained jurisdiction over a declaratory judgment action where the original patent owner assigned the patent-in-suit to a subsidiary holding company outside the district court's jurisdiction for purposes of exercising personal jurisdiction over the new patent owner. The Federal Circuit stated that a patent holding subsidiary "cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction." *Id.* In short, a patent holder cannot transfer the patent-in-suit to its corporate relative to avoid defending a declaratory judgment action on the grounds of lack of personal jurisdiction over the current patent owner. Just as the defendant in *Dainippon* could not evade the court's exercise of personal jurisdiction by transferring the patent-in-suit, neither should WhiteCell be allowed to evade this Court's exercise of subject-matter jurisdiction by purportedly transferring the patent-in-suit to Fortinet.

**B.  The Case Should Proceed Against Fortinet**

**1.  The Court Can Substitute Fortinet for WhiteCell or Join Fortinet as a Defendant Under Rule 25(c)**

As is described above, Rule 25(c) allows the Court to substitute Fortinet for WhiteCell or to join Fortinet as a co-defendant with WhiteCell. *See* FED. R. CIV. P. 25(c), advisory cmte. notes ("Under the amendment, the successor is automatically substituted as a party without an application or showing of need to continue the action."); WRIGHT, *supra*, at § 1958 ("The court, if

1 it sees fit, may allow the transferee to be substituted for the transferor. It also is free, if it wishes,
2 to retain the transferor as a party and to order that the transferee be made an additional party.");
3 discussion *supra* at § III.A.2. Therefore, even if the Court dismisses WhiteCell, the Court should
4 substitute Fortinet for WhiteCell so that Trend Micro's case may proceed unabated. As is
5 explained above, to ensure that all disputes regarding the patent-in-suit are fully adjudicated with
6 all potentially interested parties able to present their case to the Court, the Court should join
7 Fortinet as a co-defendant with WhiteCell.

### 2. The Covenant Not to Sue Between Trend Micro and Fortinet Does Not Create a Jurisdictional Loophole

#### a. There Is a Case or Controversy Between Trend Micro and Fortinet for Purposes of Declaratory Judgment Jurisdiction

11 Under controlling Supreme Court precedent, "a declaratory action is available where the
12 facts as alleged 'under all the circumstances, show that there is a substantial controversy, between
13 the parties having adverse legal interests, of sufficient immediacy and reality to warrant the
14 issuance of a declaratory judgment." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d
15 1294, 1297 (Fed. Cir. 2009) (quoting and applying *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.
16 118, 127 (2007)). Under all the circumstances in this case, there is a substantial controversy
17 between Trend Micro and Fortinet "of sufficient immediacy and reality to warrant the issuance of
18 a declaratory judgment."

19 Indeed, the circumstances in this case are analogous to the circumstances that the Federal
20 Circuit found sufficient to confer subject-matter jurisdiction over a counterclaim for patent
21 invalidity. In *Revolution Eyewear*, applying *MedImmune*, the Federal Circuit reversed the district
22 court's holding that a covenant not to sue for past infringement "ousted the court of jurisdiction"
23 over declaratory counterclaims for patent invalidity. *See* 556 F.3d at 1300. Revolution filed a
24 patent infringement suit against Aspex, and Aspex filed counterclaims for invalidity, non-
25 infringement, and unenforceability. *Id.* at 1295. Revolution gave Aspex a covenant not to sue for
26 infringement based on actions or products made, used, or sold before the case was dismissed. *Id.*
27 at 1295-96. On the same day that Revolution filed the covenant, it filed a motion to voluntarily
28 dismiss its infringement claims and to dismiss Aspex's counterclaims for lack of subject-matter

Trend Micro's Opposition to WhiteCell's Motion to Dismiss - 7 - Case No. C 10-02248 WHA

jurisdiction and for absence of a case or controversy. *Id.* at 1296. The district court dismissed Aspex's declaratory counterclaims because it found that the covenant "*forever* removes the possibility that Aspex may be sued under the [patent-in-suit] for Aspex's products made, used, or sold on or before the filing of the motion to dismiss . . . ." *Id.* (emphasis in original). The covenant did not, however, protect Aspex from suit in the future for products that it planned to reintroduce into the market. *Id.* Under all the circumstances, the Federal Circuit held that there was a sufficient case or controversy to support jurisdiction over Aspex's counterclaims. *Id.* at 1299-1300.

The Federal Circuit particularly focused on the following facts in determining that there was a case or controversy and subject-matter jurisdiction over Aspex's declaratory counterclaims. First, Aspex maintained that it had the right to make and sell certain products because Revolution's patent was invalid or unenforceable. *See id.* at 1299. Here, Trend Micro, like Aspex, maintains that it has the right to make and sell its products without a license because the patent-in-suit is not infringed and is invalid. Second, Aspex's plan to make and sell the products at issue was not speculative as evidenced by the fact that it had a quantity of those products in storage to sell in the future. *See id.* Here, Trend Micro has been making, continues to make, and plans to make and sell its products in the future. Third, Revolution stated that it would return to court if Aspex reentered the market with the products at issue. *See id.* Here, Trend Micro and Fortinet have been legal adversaries involved in prior patent-infringement litigation and their covenants not sue expire in January 2011. Fourth, Aspex would risk treble damages for willful infringement if it sold its products in the future. *See id.* Here, like Aspex, Trend Micro would risk treble damages by continuing with its current business plans to make and sell products after the covenant not to sue expires in January 2011. Considering all these facts, this Court, like the Federal Circuit in *Revolution*, should hold that this case satisfies the *MedImmune* requirements for a declaratory judgment action and deny WhiteCell's motion to dismiss.

Moreover, under Supreme Court precedent, the fact that Fortinet covenanted not to sue Trend Micro until January 2011 does not destroy the Court's jurisdiction over Trend Micro's declaratory judgment action. In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

Trend Micro's Opposition to WhiteCell's Motion to Dismiss - 8 - Case No. C 10-02248 WHA

273-74 (1941), the Supreme Court held that the district court had subject-matter jurisdiction over a declaratory judgment action where the defendant could not have sued the plaintiff at the time the declaratory judgment action was pending. Maryland Casualty filed a declaratory judgment action against Pacific Coal & Oil, which was Maryland Casualty's insured, and Mr. Orteca, who was in a car accident involving one of Pacific Coal's employees. *Id.* at 271-72. Under the applicable law, Orteca could not sue Maryland Casualty unless and until Orteca first obtained a judgment against Pacific Coal in a separate lawsuit. *See id.* at 273. Because Orteca could not sue Maryland Casualty at the time that the declaratory judgment action was pending, Orteca moved to dismiss Maryland Casualty's declaratory judgment complaint because there was not an "actual controversy" between Maryland Casualty and Orteca to support the declaratory judgment action. *See id.* at 272. The Supreme Court held that there was an actual controversy between Maryland Casualty and Orteca to satisfy the requirements for jurisdiction under the Declaratory Judgment Act because Orteca could sue Maryland Casualty in the future after obtaining a judgment against Pacific Coal. *See id.* at 274.

Fortinet's ability to sue Trend Micro is even more immediate and certain than Orteca's ability to sue Maryland Casualty. Fortinet's covenant not to sue will expire on January 27, 2011. That is a date certain less roughly two months from the hearing on WhiteCell's motion, and unlike Orteca, Fortinet does not have to first prevail in a separate action and obtain a judgment against a third party before it can sue Trend Micro on the patent-in-suit. Therefore, if the Supreme Court allowed Maryland Casualty to proceed in its declaratory judgment action against Orteca, this Court should allow Trend Micro to proceed with its declaratory judgment action against Fortinet. Otherwise, Trend Micro will be forced to either discontinue its business or face the risk of increased treble damages. In short, Trend Micro's declaratory judgment action "touches the legal relations of parties having adverse legal interests, for it affects whether [Trend Micro] can [continue in the market] without risking treble damages should the challenge eventually fail, and the dispute is amenable to specific relief through a decree of a conclusive character because the resolution of the counterclaim[] for validity . . . of the [patent-in-suit] will conclusively determine the issue." *Revolution*, 556 F.3d at 1299.

      b. <u>The Prior Covenant Not to Sue Does Not Affect the Merits of this Case Because Fortinet Steps into the Shoes of WhiteCell</u>

The existence of a covenant not to sue between Fortinet and Trend Micro does not affect the determination of the merits of the case as originally filed.  The Federal Circuit has instructed that:

> The transferee is not joined because its substantive rights are in question; rather, the transferee is brought into court solely because it has come to own the property in issue.  <u>The merits of the case</u>, and the disposition of the property, <u>are still determined vis-à-vis the originally named parties</u>.

*Minn. Mining & Mfg. Co.*, 757 F.2d at 1263 (emphasis added).  In other words, Fortinet would step into the shoes of WhiteCell and "assume[] the obligations of [WhiteCell's] pending litigation."  *See id.* ("When the successor in interest voluntarily steps into the shoes of its predecessor, it assumes the obligations of the predecessor's pending litigation if the court properly assumed jurisdiction over the predecessor and if the successor is properly served (as here). Were this not so, the owners of the property could merely transfer legal ownership of the assets from one shell corporation to another in a different jurisdiction, putting a party whose initial suit satisfied the jurisdictional requirements to the immense burden of chasing the involved assets from courtroom to courtroom.").  Fortinet, now purportedly the owner of the patent-in-suit, steps into the litigation in WhiteCell's place, allowing the Court to address "the disposition of the [patent-in-suit]."  Fortinet's prior covenant not to sue is irrelevant to this analysis.  The Court, therefore, should deny WhiteCell's motion to dismiss.

  **C.** <u>**At the Least, WhiteCell and Fortinet Should Execute *Super Sack* Unconditional and Irrevocable Covenants Not to Sue Trend Micro**</u>

If the Court does not continue this case against WhiteCell and Fortinet, then WhiteCell and Fortinet should have to execute unconditional and irrevocable covenants not to sue akin to the covenant not to sue at issue in *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995).  Only by executing such covenants not to sue Trend Micro for any alleged infringement of the patent-in-suit will the parties (and this Court) be ensured that this case does not return to this Court's docket.  Without such covenants, WhiteCell and Fortinet could

continue bouncing the patent-in-suit between themselves in a never-ending ploy to evade the Court's declaratory judgment jurisdiction. Such an unconditional and irrevocable covenant not to sue was demanded by Fortinet in other litigation with Trend Micro to resolve a declaratory judgment action brought by Fortinet against Trend Micro. Fortinet demanded such an unconditional irrevocable covenant, notwithstanding the type of covenant not to sue upon which WhiteCell relies here, which is set to expire in January 2011. Ex. 5 at 3-4. Unconditional and irrevocable *Super Sack* type covenants not to sue from WhiteCell and Fortinet, however, would resolve this controversy once and for all.

## III.   CONCLUSION

This Court had jurisdiction over this case when Trend Micro filed its Complaint, and this Court still has jurisdiction over this case after WhiteCell transferred the patent-in-suit to Fortinet. WhiteCell's attempt to evade this Court's jurisdiction fails under Supreme Court and Federal Circuit precedent and under the Federal Rules of Civil Procedure. Therefore, for the reasons set forth above, Trend Micro respectfully requests that the Court deny WhiteCell's motion to dismiss and continue this case against both WhiteCell and Fortinet, or at least against either WhiteCell or Fortinet.

Dated: October 28, 2010

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: /s/ Christopher D. Bright
         Christopher D. Bright

Attorney for Plaintiff
TREND MICRO INCORPORATED

DM_US 26705027-6.086248.0013