IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREND MICRO CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WHITECELL SOFTWARE, INC.,<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　／ | No. C 10-02248 WHA<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND VACATING HEARING** |

## INTRODUCTION

In this action for declaratory judgment of non-infringement and invalidity of a United States patent, defendant WhiteCell Software, Inc. moves to dismiss this action for lack of subject-matter jurisdiction. According to defendant, its assignment of all right, title, and interest in the patent-in-suit to a non-party entity after this lawsuit was filed removed any "actual controversy" between the parties as required under the Declaratory Judgment Act and Article III of the Constitution. In other words, defendant asserts that because it no longer has standing to sue on the patent-in-suit, there exists no "real and substantial" controversy between parties having adverse legal interests of sufficient immediacy to warrant the issuance of a declaratory judgment. For the reasons set forth herein, defendant's motion to dismiss is **DENIED**.

## STATEMENT

Plaintiff Trend Micro Corporation instituted this declaratory judgment action against WhiteCell in May 2010. The complaint alleged that WhiteCell was the owner of all right, title,

and interest in United States Patent No. 7,698,744 and had threatened both Trend Micro and its customers with litigation based upon the patent-in-suit. These threats formed the basis of Trend Micro's declaratory judgment lawsuit against WhiteCell. The instant motion, however, is anchored entirely in events that occurred *after* this litigation was initiated.

The relevant facts are as follows. After receipt of service of the summons and complaint, defendant WhiteCell executed a patent assignment agreement with Fortinet, Inc., a non-party to this litigation who is both a direct competitor and frequent litigation adversary to Trend Micro. In the assignment agreement, WhiteCell purportedly transferred "all of its right, title and interest in and to U.S. Patent No. 7,698,744" including its rights "in and to any and all causes of action . . . for past, present, and future infringement . . . and the right to sue on all such causes of action" to Fortinet (Br. 3; DeSanctis Decl. Exh. A). The assignment of the '744 patent was recorded with the United States Patent and Trademark Office on September 9 (DeSanctis Decl. Exh. B). Due to this maneuver, WhiteCell now asserts that there is no longer any justiciable controversy to maintain this action because it no longer has standing to sue Trend Micro for past, present, or future infringement of the '744 patent. That right — according to WhiteCell — now resides solely with Fortinet.

Additionally, WhiteCell argues in its motion that substitution or joinder of Fortinet into this action pursuant to FRCP 25(c) would not cure this jurisdictional deficiency. This is because — according to WhiteCell — there is no evidence that Fortinet has sued or will imminently sue Trend Micro for infringement of the patent-in-suit. In fact, WhiteCell contends that nearly five years ago, Trend Micro and Fortinet executed cross-covenants not to sue each other for patent infringement *of any patent*, and that those covenants eliminate the possibility of an "actual controversy" between them.

Trend Micro does not dispute most of these factual allegations. It does, however, fill in some important details. *First*, according to Trend Micro, the agreement between WhiteCell and Fortinet was not a simply a one-way assignment of the '744 patent. Rather, it was a "peculiar" (in Trend Micro's words) patent swap, where the entities traded patents while simultaneously granting each other non-exclusive, non-assignable patent licenses (Opp. 1; Bright Decl. Exh. 1).

2

*Second*, Trend Micro points out that, *not* coincidentally, the attorney who prosecuted the patent-in-suit and recorded the patent assignments for WhiteCell and Fortinet — Attorney Michael DeSanctis — is the same attorney who prosecutes patents for Fortinet (Opp. 1; Bright Decl. Exhs. 2 and 3). Given these alleged facts, Trend Micro argues that this was a "choreographed ploy" to "evade this Court's jurisdiction" and shield the patent-in-suit from a meritorious invalidity challenge (Opp. 1, 3). *Third*, Trend Micro notes that while it *does* have cross-covenants with Fortinet limiting their ability to sue each other for patent infringement, the covenants are set to expire on January 27, 2011 (Bright Decl. Exh. 4). After this date, Trend Micro contends that it will be susceptible to immediate litigation with Fortinet over any patent, including the newly assigned patent-in-suit.

Finally, separate and aside from these points, Trend Micro argues that FRCP 25(c) — which states: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." — provides a proper procedural mechanism to allow this declaratory judgment action to continue unabated. In other words, Trend Micro contends that the assignment of the '744 patent had no impact whatsoever upon the justiciability of this dispute. According to Trend Micro, FRCP 25(c) allows this action to continue "against WhiteCell *automatically*, and any judgment is binding on Fortinet even though Fortinet is not a named party" (Opp. 4).

As explained below, neither side is entirely correct.

**ANALYSIS**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a). The dispute, however, must be "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (U.S. 2007). Stated differently, a district court must ask "whether the facts alleged, under all the circumstances, show that there is a

3

substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Ibid.* (citations omitted).

This requirement of a real and substantial dispute must persist throughout the litigation. "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint [was] filed." *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1360 (Fed. Cir. 2008) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)). If, however, an actual controversy existed at the time the complaint was filed, jurisdiction is presumed to continue throughout the proceedings unless evidence is presented to challenge it. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993). If such evidence is presented, the burden then falls on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction still exists. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

Given this backdrop, WhiteCell's argument has clear merit. Since WhiteCell supposedly assigned all of its right, title, and interest in the '744 patent — including its right to sue "for past, present, and future [patent] infringement" — to a non-party entity, it can no longer sue Trend Micro for infringing the '744 patent. *See Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). Accordingly, even if there was an "actual controversy" at the time this litigation was commenced, the parties no longer "have immediate adverse legal interests concerning the '744 Patent" (Br. 6). Whatever threats WhiteCell may have made to Trend Micro in the past, it can no longer follow through on them. Ordinarily, this would be sufficient to eliminate any "actual controversy" as between the litigants and eliminate jurisdiction. *See King Pharmaceuticals, Inc. v. Eon Labs, Inc.,* 616 F.3d 1267, 1282–83 (Fed. Cir. 2010) (holding that a party's assignment of "all its interests" in the patents-in suit including "any rights it may have" to sue the opposing party for damages rendered the action devoid of any "actual case or controversy" as between those parties).

WhiteCell's second argument — that substitution of Fortinet into this action pursuant to FRCP 25(c) would not restore any "actual controversy" to confer jurisdiction — is similarly compelling. Since Fortinet and Trend Micro have executed cross-covenants not to sue each other

4

for patent infringement and there is no evidence that Fortinet has threatened to sue Trend Micro over the '744 patent, there is a strong basis to conclude that no controversy "of sufficient immediacy and reality" exists between Trend Micro and Fortinet to warrant the issuance of a declaratory judgment. *See Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008) ("[T]he existence of a patent is not sufficient to establish declaratory judgment jurisdiction.") (citation omitted).

On this particular point, Trend Micro is wrong that FRCP 25(c) obviates the requirement of an "actual controversy" to sustain this declaratory judgment action. While it is true that FRCP 25(c) provides a *procedural* mechanism to substitute parties (or continue against the original party) in the event that an interest is transferred in the midst of litigation, nothing in FRCP 25(c) purports to preserve subject-matter jurisdiction under the Declaratory Judgment Act or Article III where the transfer itself eliminates "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune*, 549 U.S. at 127; *see also* 28 U.S.C. 2201(a); U.S. CONST. art. III, § 2, cl. 1. Thus, even if substitution of Fortinet into this action would be procedurally proper under FRCP 25(c), this order must still ensure that an "actual controversy" remains to be adjudicated and an advisory opinion is not rendered.

Trend Micro's arguments that FRCP 25(c) is more than a procedural rule are unpersuasive. It is true, as Trend Micro points out, that FRCP 25(c) may allow an action to continue unabated when the substitution or joining of a party destroys *diversity* jurisdiction or *personal* jurisdiction, where such jurisdiction properly existed at the onset of the litigation. *See Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428–29 (1991); *see also Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1262–64 (Fed. Cir. 1985). The same, however, cannot be said for the requirement of a justiciable case or controversy. It is well-established that the requirement of an "actual controversy" under the Declaratory Judgment Act, which is merely a recognition that the federal judicial power is restricted under the Constitution to "cases and controversies," "must be extant at all stages of review, not merely at the time the complaint [was] filed." *Janssen Pharmaceutica*, 540 F.3d at 1360; *see also Aetna Life Ins. Co. of*

5

*Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–41 (1937). Accordingly, events that take place *after* a complaint is filed may eliminate the actual controversy between the parties. *See Benitec*, 495 F.3d at 1345. Trend Micro's argument that FRCP 25(c) obviates the necessity of "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" is therefore rejected.

Even so, this order disagrees with WhiteCell that its motion should be granted without further investigation. As stated, Trend Micro has raised significant doubts over whether the assignment of the '744 patent was an improper and potentially collusive maneuver to divest this Court of jurisdiction so that WhiteCell (if an immediate "reverse" patent swap was executed) or Fortinet (following the expiration of its cross-covenants with plaintiff) could bring an infringement action in a different jurisdiction.[*] Stated differently, the Court is not yet satisfied that the patent swap executed between WhiteCell and Fortinet eliminated the "actual controversy" that surrounded the '744 patent when this action was initiated. Given the tumultuous competitive and litigation history between Trend Micro and Fortinet, the looming expiration of their covenants not to sue, and the "peculiar" acquisition of the patent-in-suit by Fortinet with full knowledge of these proceedings, Trend Micro has a colorable argument that a "substantial controversy . . . of sufficient immediacy and reality" still remains.

For these reasons, limited jurisdictional discovery will be ordered. Trend Micro shall have the opportunity to prove whether the assignment agreement between WhiteCell and Fortinet was entered into for the purpose of evading jurisdiction and/or whether an "actual controversy" still exists regarding the '744 patent. Plaintiff is cautioned, however, that mere ownership of a potentially adverse patent by Fortinet and the mere possibility of litigation over a patent is

---

[*] The mere fact that Trend Micro and Fortinet currently have cross-covenants not to sue each other for patent infringement is not dispositive, under these circumstances, of the "actual controversy" issue. *First*, the covenant is set to expire in January 2011 — a mere two months from now. While an argument could be made that the threat of litigation lacks "sufficient immediacy," there is no bright-line rule that parties must wait until such covenants expire for a justiciable controversy to exist. *Second*, if the patent swap was indeed collusive, there is nothing preventing Fortinet and WhiteCell from transferring the same patents again following dismissal of the instant lawsuit, and WhiteCell suing Trend Micro in a jurisdiction of its choice.

6

normally insufficient to invoke jurisdiction under the Declaratory Judgment Act. Plaintiff is further admonished that FRCP 25(c) does not (and cannot) maintain the illusion of justiciability under Article III when the underlying transfer has eliminated any "actual controversy."

**CONCLUSION**

For the foregoing reasons, WhiteCell's motion is **DENIED**. This denial, however, will be without prejudice to a future motion to challenge jurisdiction on justiciability grounds following jurisdictional discovery. Pursuant to FRCP 21, which allows a court to add a party "at any time" and "on just terms," Fortinet — the current owner of the patent-in-suit — will be added to this action to determine whether an "actual controversy" still exists. Fortinet must be added to this action, and served with the summons and complaint, no later than **DECEMBER 2, 2010**. Proof of service must also be filed by this deadline.

In the meanwhile, both sides will be allowed the following jurisdictional discovery: (1) ten document requests, (2) three depositions, (3) no requests for admissions, and (4) three interrogatories (no subparts will be allowed). All other proceedings will be stayed until the jurisdictional issues are resolved. Plaintiff must then show cause why this action should not be dismissed for lack of jurisdiction **BY NOON ON JANUARY 28, 2011**. WhiteCell and Fortinet may then file joint or separate responses **BY NOON ON FEBRUARY 4**. The issue will then be decided on the papers unless a hearing is set by future order.

The hearing on the instant motion is **VACATED**.

**IT IS SO ORDERED.**

Dated: November 15, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE