STEFANI E. SHANBERG, State Bar No. 206717
Email: sshanberg@wsgr.com
MATTHEW A. ARGENTI, State Bar No. 240954
Email: margenti@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendant
FORTINET, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TREND MICRO INCORPORATED, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>WHITECELL SOFTWARE, INC., a Delaware Corporation, and FORTINET, INC., a Delaware corporation,<br><br>Defendants. | CASE NO.: 3:10-cv-02248-WHA<br><br>**DEFENDANT FORTINET, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date: February 17, 2011**<br>**Time: 8:00 a.m.**<br>**Judge: Hon. William H. Alsup**<br>**Location: Courtroom 9, 19th Floor** |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on February 17, 2011, at 8:00 a.m. or as soon thereafter as this matter may be heard, in the courtroom of the Honorable William H. Alsup, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Fortinet, Inc. ("Fortinet") will move and hereby moves to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) on the grounds that no justiciable controversy exists between it and Plaintiff Trend Micro Incorporated ("Trend Micro") on the subject matter of Trend Micro's declaratory judgment action, and, therefore, the Court lacks subject matter jurisdiction.

This motion is based on this notice of motion and motion, the supporting memorandum

of points and authorities below, the accompanying declaration of Todd Nelson ("Nelson Decl."), the pleadings and papers on file with the Court, and all other matters properly before this Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Fortinet has no choice but to file this motion to dismiss. As an initial matter, Fortinet wants to make clear that it is not seeking to avoid the jurisdictional discovery ordered by the Court in its Order Denying Motion to Dismiss ("Order"). Dkt. 35. But Fortinet cannot answer Trend Micro's complaint. If Fortinet were to file an answer, it would either have to file counterclaims for infringement—something it does not intend to do—or it would have to answer without counterclaims for infringement—which Trend Micro may argue waives Fortinet's right to ever file infringement claims on U.S. Patent No. 7,698,744 ("the '744 patent") and essentially grants Trend Micro a free license to the '744 patent, something Fortinet has no conceivable obligation to do. *See Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) (recognizing a "uniform national rule" that "Rule 13(a) makes an infringement counterclaim to a declaratory judgment action for noninfringement compulsory," and that "failure to assert a compulsory counterclaim constitutes a waiver of that claim").

Accordingly, Fortinet files this motion to dismiss incorporating by reference WhiteCell Software, Inc.'s ("WhiteCell") motion to dismiss (Dkt. 25), attempting to avoid redundancy, and addressing the specific concerns raised in the Court's Order. Because the Court's Order contemplated the possibility of a "future motion to challenge jurisdiction on justiciability grounds ***following jurisdictional discovery***" (Dkt. 35 at 7) (emphasis added) and Fortinet believes this motion will ultimately be mooted by the parties' briefing on the order to show cause, Fortinet has noticed this motion for a hearing, if one is necessary, following the conclusion of that briefing. Because Fortinet's response to Trend Micro's Amended Complaint (Dkt. 38) is due on December 23, Fortinet files this motion now, prior to jurisdictional discovery.

As set forth in detail below, when that jurisdictional discovery[1] is complete, it will show

[1] Fortinet submits that, while it has nothing to hide and is certainly willing to participate in the jurisdictional discovery, the Nelson Declaration submitted herewith should conclusively (continued...)

that Fortinet has never threatened, or even suggested, to Trend Micro that it will assert the '744 patent against Trend Micro. Jurisdictional discovery will further confirm that the cross-patent assignment between Fortinet and WhiteCell was in no way collusive or an attempt to avoid this Court's jurisdiction. Further, under the circumstances, litigation history between the parties does not create case or controversy, particularly where, as here, that history has been of Trend Micro accusing Fortinet of patent infringement and not the other way around. Accordingly, Fortinet respectfully requests that, whether in ruling on this motion, or in response to the order to show cause, the Court dismiss this case because there is no declaratory judgment jurisdiction.

## II. BACKGROUND

### A. Procedural Background

This case was originally filed by Trend Micro in May 2010 (Dkt. 1) against WhiteCell seeking a declaratory judgment of noninfringement and invalidity of the '744 patent. In September 2010, WhiteCell assigned the '744 patent to Fortinet and subsequently filed a motion to dismiss for lack of subject matter jurisdiction, arguing that it had no remaining interest in the '744 patent and, therefore, the patent could not form the basis of a controversy between WhiteCell and declaratory judgment plaintiff Trend Micro. *See* Dkt. 25 at 5-6.

The Court denied that motion to dismiss, but in doing so acknowledged that "WhiteCell's argument has clear merit" and that the assignment to Fortinet left WhiteCell without any way to sue Trend Micro for infringing that patent, eliminating the actual case or controversy between the parties. *See* Dkt. 35 at 4. Further, the Court recognized that given the cross-covenants not to sue between Fortinet and Trend Micro and the lack of evidence that Fortinet has threatened to sue Trend Micro over the '744 patent, "there is a strong basis to conclude that no controversy 'of sufficient immediacy and reality' exists between Trend Micro and Fortinet to warrant the issuance of a declaratory judgment." *Id*. at 5 (citations omitted).

The Court did, however, find that limited jurisdictional discovery was merited to

---

(...continued from previous page)
demonstrate that jurisdictional discovery is wasteful of the Court's and the parties' resources, as there is no evidence whatsoever of any actual controversy, and Trend Micro should dismiss this action for declaratory relief.

determine "whether the assignment agreement between WhiteCell and Fortinet was entered into for the purpose of evading jurisdiction and/or whether an 'actual controversy' still exists regarding the '744 patent." *Id.* at 6. The Court cautioned that "mere ownership of a potentially adverse patent by Fortinet and the mere possibility of litigation over a patent is normally insufficient to invoke jurisdiction under the Declaratory Judgment Act." *Id.* at 6-7. The Court ordered Trend Micro to show cause why this action should not be dismissed for lack of declaratory judgment jurisdiction by January 28, 2011. *Id.* at 7.

**B. Factual Background**

In early November 2009, WhiteCell's outside patent counsel contacted Fortinet's Intellectual Property Counsel, Todd Nelson, about the possibility of Fortinet purchasing the rights to the patent application that would eventually issue as the '744 patent. Nelson Decl. ¶ 2.[2] Mr. Nelson performed an internal assessment of the '744 patent application, and the parties engaged in brief preliminary discussions through December 2009, but then had no communication for approximately eight months. *Id.* ¶ 4. In August 2010, after the '744 patent issued, Mr. DeSanctis introduced Mr. Nelson and Ed Harper, President and CEO of WhiteCell, and the parties ultimately negotiated an exchange of patent rights, with Fortinet assigning U.S. Patent No. 7,665,119 to WhiteCell (*see* Dkt. 29-4 (Exh. 3)) and WhiteCell assigning the '744 patent to Fortinet (see Dkt. 27-1 (Exh. A)). Nelson Decl. ¶ 5. Leading up to this time, WhiteCell attempted to sell or license the '744 patent to other parties, including Trend Micro. *See, e.g.*, Dkt. 38-6 (Exh. F).

Throughout the negotiations between Fortinet and WhiteCell, Mr. Nelson was the only Fortinet representative to communicate with WhiteCell. Nelson Decl. ¶ 6. The sum total of the communications leading to the agreement to enter into a cross-patent assignment was a handful of emails and phone calls between Mr. Nelson and Mr. DeSanctis and one email and one or two

[2] It is a coincidence that Mike DeSanctis was counsel for WhiteCell in connection with its prosecution and attempt to license or sell the '744 patent and is Fortinet's patent prosecution counsel. Indeed, Fortinet was not even aware that Mr. DeSanctis had contacted Trend Micro regarding the '744 patent, until it saw the declaratory judgment complaint filed by Trend Micro. Nelson Decl. ¶ 3.

telephone calls between Mr. Nelson and Mr. Harper. *Id.* ¶ 7. After Fortinet and WhiteCell reached an agreement as to the terms, there were a limited number of additional emails and calls exchanged between Mr. Nelson and Mr. DeSanctis, representing WhiteCell, to manage the drafting of the assignment documents and the closing of the cross-assignments. *Id.* ¶ 8. Mr. DeSanctis represented WhiteCell throughout the transaction. *Id.* Fortinet represented itself. *Id.* ¶ 3.

At no time before, during, or after the above-listed communications did Mr. Nelson entertain or discuss with any WhiteCell representative the possibility of reverting ownership of the '744 patent to WhiteCell after executing the assignment, nor did Fortinet entertain or discuss with WhiteCell avoiding the jurisdiction of the Northern District of California. *Id.* ¶ 9. To be clear, Fortinet has no intent to assign ownership of the '744 patent back to WhiteCell. *Id.* ¶ 10. And, for what it is worth, the only affirmative claims of patent infringement Fortinet has ever filed were not filed against Trend Micro and were filed in the Northern District of California (3:10-cv-05148-RS and 5:09-cv-00036-RMW). *Id.* ¶ 11.

Moreover, Fortinet has not performed or otherwise commissioned an assessment of whether Trend Micro infringes the '744 patent and, therefore, certainly does not intend to assert infringement against Trend Micro at this time. *Id.* ¶ 12. In fact, Fortinet has never discussed the '744 patent with Trend Micro in any capacity. *Id.* ¶ 13. To be clear, Fortinet has never threatened Trend Micro in relation to the '744 patent. *Id.*

It is true that there is a history of litigation between Trend Micro and Fortinet—a history that consists of Trend Micro suing Fortinet for patent infringement. *Id.* ¶ 14. Indeed, when Trend Micro started this "history of litigation" in 2004, Fortinet had not a single patent to its name; Fortinet did not file a counterclaim for patent infringement; and Fortinet has never since asserted a single patent against Trend Micro. *Id.* Though it did file a declaratory judgment complaint, Fortinet has been on the defensive throughout its legal entanglements with Trend Micro. *Id.* While Fortinet has no present intent to assert the '744 patent, or any other patent, against Trend Micro, Fortinet certainly reserves the right to do so if it determines that Trend Micro infringes and believes such a suit is necessary in the future, for example, if Trend Micro

again sues Fortinet for patent infringement. *Id.*

Fortinet, however, now has over 150 issued patents and pending patent applications, so although it is true that Fortinet is interested in building its defensive portfolio, particularly in view of Trend Micro's history of attacking it, it is unclear why Trend Micro is so intent on maintaining this litigation relating to the '744 patent. *Id.* ¶ 15. Finally, Fortinet believes it is worth noting that its intention not to accuse Trend Micro of infringing the '744 patent is wholly apart from the covenant not to sue in the Fortinet/Trend Micro settlement and license agreement. *Id.* ¶ 16. To the contrary, it results from the fact that Fortinet has performed no infringement analysis and does not seek to engage in further patent infringement litigation with Trend Micro if it can be avoided. *Id.* Acquiring the '744 patent is merely one part of building a defensive patent portfolio—a task that Fortinet undertook after Trend Micro introduced it to patent litigation. *Id.* It is at best ironic that Trend Micro, the sole aggressor in all past patent litigation with Fortinet, now forces Fortinet into still further patent litigation on grounds of Fortinet's alleged propensity to sue.

## III. LEGAL ARGUMENT

For essentially the same reasons provided in WhiteCell's motion to dismiss and set forth in this Court's Order thereon, Trend Micro's claims against Fortinet fail to satisfy the 28 U.S.C. §2201(a) requirement of an "actual controversy" sufficient to convey declaratory judgment jurisdiction upon this Court. No dispute exists between Fortinet and Trend Micro relating to the '744 patent, much less one that is "real and substantial" or "definite and concrete," as required for jurisdiction. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Indeed, the sum total of allegations of controversy between Trend Micro and Fortinet in Trend Micro's amended complaint amount to the following: rights in the '744 patent were assigned to Fortinet (Dkt. 38 at ¶¶ 17-18); that assignment was recorded with the Patent Office (*Id.* at ¶ 19); Fortinet and Trend Micro executed covenants not to sue that are set to expire on January 27, 2011 (*Id.* at ¶ 20); and that neither WhiteCell nor Fortinet has granted Trend Micro a covenant not to sue or a license to the '744 patent (*Id.* at ¶ 21). Even on its face, Trend Micro's complaint fails to sufficiently allege a justiciable case or controversy.

The bottom line is that Trend Micro does not like it that Fortinet now owns the ‘744 patent. But that does not establish controversy. *See Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (“More is needed than knowledge of … an adversely held patent.”). The plaintiff must demonstrate some affirmative act by the defendant evidencing a real and immediate injury or threat of future injury. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (citation omitted) (“jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee”). Here, Fortinet has never approached Trend Micro regarding the ‘744 patent, and Fortinet has performed no analysis to determine whether it even believes Trend Micro infringes the ‘744 patent. *See* Nelson Decl. ¶¶ 12-13. Fortinet simply owns the ‘744 patent, which is insufficient to establish an immediate case or controversy. *See Prasco*, 537 F.3d at 1338; *Capo*, 387 F.3d at 1355.

In the absence of any threat—or suggestion—by Fortinet that it will assert the ‘744 patent against Trend Micro, litigation history between the two companies cannot create a current case or controversy regarding the ‘744 patent. Moreover, as discussed above, that litigation activity is exclusively one-sided when it comes to patent enforcement—Trend Micro has consistently and aggressively sought to enforce its patents against Fortinet. *See* Nelson Decl. ¶¶ 14-15. That Fortinet has been forced to defend itself against Trend Micro’s previous attacks should not be held as evidence that Trend Micro is now threatened by Fortinet. As noted, Trend Micro is not now threatened nor has it ever been threatened on any of Fortinet’s patents, including the ‘744 patent. Further, despite the history between the parties, Fortinet has no plans or desire to engage in future patent litigation with Trend Micro. *See id.* ¶ 17. Accordingly, prior litigation between the parties cannot alone establish an actual case or controversy exists between Fortinet and Trend Micro regarding the ‘744 patent.

Finally, Fortinet assures the Court that the cross-patent assignment between Fortinet and WhiteCell was in no way collusive: there are no side agreements; it is not conditional; there are no reversionary rights; and WhiteCell retained no rights. *Id.* ¶ 18. Similarly, the cross-patent

assignment was in no way an attempt to avoid this Court's jurisdiction. *Id.* ¶ 19. To the contrary, as set forth above, when it must litigate, Fortinet has demonstrated that it is perfectly happy to do so in the Northern District of California. *Id.* Accordingly, none of the concerns raised in the Court's order, *e.g.* regarding reversionary rights or evasion of jurisdiction, should change the conclusion that there is no subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons—including because Fortinet has never threatened to assert the '744 patent against Trend Micro; the cross-patent assignment between Fortinet and WhiteCell was in no way collusive or an attempt to avoid this Court's jurisdiction; and there is no evidence whatsoever of actual controversy—Fortinet respectfully requests that the Court dismiss Trend Micro's complaint.

Dated: December 22, 2010

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Stefani E. Shanberg*
Stefani E. Shanberg

Attorneys for Plaintiff FORTINET, INC.