IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TREND MICRO CORPORATION,

    Plaintiff,

v.

WHITECELL SOFTWARE, INC., and FORTINET, INC.,

    Defendants.

No. C 10-02248 WHA

**ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND VACATING HEARING**

**INTRODUCTION**

In this action for declaratory judgment of non-infringement and invalidity of a United States patent, defendant Fortinet, Inc. moves to dismiss the action for lack of subject-matter jurisdiction. Fortinet argues that there exists no "real and substantial" controversy between parties having adverse legal interests of sufficient immediacy to warrant the issuance of a declaratory judgment. For the reasons set forth herein, Fortinet's motion to dismiss is **GRANTED**.

**STATEMENT**

Plaintiff Trend Micro Corporation instituted this declaratory judgment action against defendant WhiteCell Software, Inc. in May 2010. The complaint alleged that WhiteCell was the owner of all right, title, and interest in United States Patent No. 7,698,744 and had threatened both Trend Micro and its customers with litigation based upon the patent-in-suit. These threats formed the basis of Trend Micro's declaratory judgment lawsuit against WhiteCell.

After the complaint was filed and served, however, WhiteCell executed a patent assignment agreement with Fortinet, who at that time was a non-party to this litigation. Fortinet is both a direct competitor and frequent litigation adversary to Trend Micro. In October 2010, WhiteCell filed a motion to dismiss, arguing that because of the patent assignment it no longer had standing to sue Trend Micro for past, present, or future infringement of the '744 patent. Since the right to sue on the patent had been transferred entirely to Fortinet, WhiteCell argued that there no longer was any justiciable controversy to maintain the action (Dkt. No. 25). In light of some peculiar circumstances surrounding the patent assignment (which are set forth at Dkt. No. 35), WhiteCell's motion to dismiss was denied. Fortinet was added to the action, and jurisdictional discovery was allowed to determine whether an actual controversy exists between Trend Micro and either or both of WhiteCell and Fortinet (Dkt. No. 35). With the benefit of jurisdictional discovery, Trend Micro was ordered to show cause why this action should not be dismissed for lack of subject-matter jurisdiction. Trend Micro's response to the show-cause order also serves as an opposition to Trend Micro's instant motion to dismiss; this order follows full briefing on the motion.

The order denying WhiteCell's motion to dismiss found that "Trend Micro has raised significant doubts over whether the assignment of the '744 patent was an improper and potentially collusive maneuver to divest this Court of jurisdiction so that WhiteCell (if an immediate 'reverse' patent swap was executed) or Fortinet (following the expiration of its cross-covenants with plaintiff) could bring an infringement action in a different jurisdiction." In particular, it found that, "[g]iven the tumultuous competitive and litigation history between Trend Micro and Fortinet, the looming expiration of their covenants not to sue, and the 'peculiar' acquisition of the patent-in-suit by Fortinet with full knowledge of these proceedings, Trend Micro has a colorable argument that a 'substantial controversy . . . of sufficient immediacy and reality' still remains." For these reasons, Trend Micro was given "the opportunity to prove [through jurisdictional discovery] whether the assignment agreement between WhiteCell and Fortinet was entered into for the purpose of evading jurisdiction and/or whether an 'actual controversy' still exists regarding the '744 patent" (Dkt. No. 35 at 6).

Facts adduced during the jurisdictional discovery include the following. The first negotiations between WhiteCell and Fortinet regarding purchase of the '744 patent occurred in November 2009. (The patent had not yet issued, so these negotiations concerned the application that eventually issued as the '744 patent.) WhiteCell initiated these initial discussions, and Fortinet showed mild interest. Fortinet made a "low-ball" offer that was not accepted, and negotiations waned. The parties had no contact between December 2009 and August 2010, when the '744 patent issued. Negotiations then resumed, resulting in an assignment agreement that was signed on September 8, 2010, and recorded the following day (Nelson Decl. ¶¶ 2–5; Bright Exh. B). By way of the assignment agreement, WhiteCell conveyed to Fortinet "all of its right, title and interest in and to" the '744 patent, including "any and all causes of action (excepting claims upon the United States of America) for past, present, and future infringement of" the '744 patent (Dkt. No. 27-1).

Fortinet maintains that it "has not performed or otherwise commissioned an assessment of whether Trend Micro infringes the '744 patent" (Nelson Decl. ¶ 12). During negotiations, WhiteCell emailed Trend Micro two claim charts comparing the '744 patent with McAffee and Trend Micro products, but the Trend Micro individual who received that email testified, "I don't believe I even opened either of them. I can't recall — I can't recall specifically reviewing them." (Nelson Supp. Decl. Exh. A 15:20–21). Fortinet has not threatened or communicated with Trend Micro regarding infringement of the '744 patent.

Fortinet and Trend Micro have a litigious history, but the actions between them arose entirely from Trend Micro bringing patent-infringement claims against Fortinet. Trend Micro has not identified a single example of Fortinet asserting a patent against Trend Micro (Opp. 4–5). To settle a portion of their past litigation, Fortinet and Trend Micro entered into a covenant not to sue for patent infringement, and that agreement expired in January 2011 (Bright Exh. J). Trend Micro states that it has offered to drop its instant declaratory relief action against Fortinet in return for an unconditional covenant not to sue on the '744 patent, but Fortinet has declined this offer (Opp. 7).

**ANALYSIS**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a). The dispute, however, must be "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Stated differently, a district court must ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Ibid.* (citations omitted).

This requirement of a real and substantial dispute must persist throughout the litigation. "Jurisdiction over a declaratory judgment action must be present 'at all stages of review, not merely at the time the complaint is filed.'" *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1360 (Fed. Cir. 2008) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)). If, however, an actual controversy existed at the time the complaint was filed, jurisdiction is presumed to continue throughout the proceedings unless evidence is presented to challenge it. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993). If such evidence is presented, the burden then falls on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction still exists. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344–45 (Fed. Cir. 2007). Here, such evidence was presented, and Trend Micro was ordered to show cause why this action should not be dismissed for lack of subject-matter jurisdiction. Even with the benefit of jurisdictional discovery, however, Trend Micro has not carried its burden of establishing that an actual controversy still exists.

As an initial matter, Trend Micro argues only that a substantial controversy exists between Fortinet and itself, *not* between WhiteCell and itself. Because Trend Micro's response to the show-cause order does not assert subject-matter jurisdiction on the basis of an actual controversy between Trend Micro and WhiteCell, this order need consider only the relationship between Trend Micro and Fortinet. The facts of that relationship, as adduced during jurisdictional

4

discovery, do not establish "a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

"[T]he existence of a patent is not sufficient to establish declaratory judgment jurisdiction." Instead, the party invoking jurisdiction must point to "some affirmative act by the patentee" that forms the basis for an actual controversy between the parties. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338–39 (Fed. Cir. 2008). On the present record, there was no such affirmative act by Fortinet. Fortinet has not made any claim that Trend Micro infringes the '744 patent. Fortinet has not threatened or otherwise communicated with Trend Micro regarding infringement of that patent. Fortinet has not even performed an infringement analysis to determine whether any Trend Micro products may infringe the patent. Although Fortinet did receive an infringement analysis from WhiteCell, Fortinet has not used that claim chart for any purpose, and the sole Fortinet individual with access to the document may not have even reviewed it. Trend Micro fears that Fortinet is now well-positioned to mount an attack based on the '744 patent, but the only step Fortinet has yet taken down that road is acquiring the '744 patent. That is not enough. "[J]urisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another *or even perceives such a patent to pose a risk of infringement*, without some affirmative act by the patentee." *Id.* at 1339 (emphasis added). Trend Micro points to several reasons why it fears the '744 patent in Fortinet's hands, but none of the foundations for Trend Micro's fears conjures up the specter of an actual, imminent controversy between the parties.

*First*, Trend Micro argues that Fortinet's acquisition of the '744 patent from White Cell was motivated by a desire to assert it against Trend Micro. To support this theory, Trend Micro remarks that the acquisition was "an unusually fast transaction" and that Fortinet's interest in the patent increased after it learned of the instant declaratory judgment action. Trend Micro also cites the litigation history between itself and Fortinet, noting that Fortinet has initiated actions against Trend Micro in the past. Looking to the future, Trend Micro notes that a covenant not to sue between itself and Fortinet expired recently, and that Fortinet has rejected Trend Micro's offer to

5

drop this declaratory judgment action in return for an unconditional covenant not to sue on the '744 patent (Opp. 2–9). The facts, however, do not support Fortinet's theory.

The negotiations between WhiteCell and Fortinet began in November 2009, nearly a year before the assignment transaction was completed. Although the negotiations were rekindled in the wake of this declaratory judgment action, Fortinet's explanation for its renewed interest — that it could acquire the patent at a discounted rate in light of the litigation — is credible. Trend Micro also misreads the parties' prior litigation history. Although Fortinet has initiated prior actions against Trend Micro, they were all satellite litigation generated by Trend Micro's patent-infringement suits against Fortinet. *Fortinet has never asserted any patent against Trend Micro.* All of the litigation Trend Micro identifies arose from Trend Micro accusing Fortinet of patent infringement and Fortinet defending against those accusations. In light of this one-way litigation history, Fortinet's explantation that it acquired the '744 patent as a defensive strategy and "has no plans or desire to engage in future patent litigation with Trend Micro" is credible (Br. 7; Nelson Decl. ¶¶ 16–17). That Fortinet and Trend Micro no longer have a covenant not to sue does not change this analysis. Similarly, Fortinet's decision not to end this action by accepting Trend Micro's settlement offer — which would render Fortinet's newly-acquired patent worthless as a defense against Trend Micro's historic aggression — does not constitute a threat of infringement litigation. The fact that Fortinet has positioned itself to be able to sue Trend Micro on the '744 patent and is keeping open the option of doing so at some indefinite time in the future does not create a real and immediate controversy between Fortinet and Trend Micro.

*Second*, Trend Micro asserts that Fortinet and WhiteCell have entered negotiations to establish a separate commercialization entity that would grant licenses from a pooled patent portfolio including the '744 patent family. Trend Micro further argues that this "licensing entity is immediate and real, as WhiteCell and Fortinet have already identified their first target, F-Secure, and have entered into licensing negotiations with them" (Opp. 6). This theory is based on a misreading of three emails. The emails Trend Micro cites show that after the '744 patent was transferred from WhiteCell to Fortinet, F-Secure expressed to WhiteCell its renewed interest in licensing the '744 patent and a continuation application. Because the '744 patent had been

6

transferred to Fortinet but the continuation applications remained with WhiteCell, Fortinet and WhiteCell discussed the possibility of jointly granting F-Secure a license to the entire '744 patent family and splitting the royalty. In the context of that discussion, Fortinet and WhiteCell expressed agreement that the F-Secure situation illustrated how the "idea" of forming a joint licensing entity might be mutually beneficial (Bright Exhs. K–M). These emails do not establish that such an entity is "real and immediate" as Trend Micro claims, and even the confirmed existence of such a joint licensing entity would not necessarily establish that a *controversy* between Trend Micro and Fortinet is real and immediate.

*Third*, Trend Micro argues that Fortinet believes WhiteCell still has rights in the '744 patent, and that Fortinet intends to pressure WhiteCell to assert these alleged rights against Trend Micro. (Opp. 6–8). This argument is based on one email that shows essentially the opposite. The email, from Fortinet's counsel to WhiteCell's counsel, purports to confirm a series of conversations between counsel regarding WhiteCell's settlement discussions with Trend Micro. The email represents that "WhiteCell has agreed to provide Trend Micro with a license to whatever rights it has in the '744 patent, even though it has none, and a covenant that White Cell will not to sue [*sic*] Trend Micro on any related patents," and that in return for the license, Trend Micro agreed to dismiss WhiteCell from this action. This unusual arrangement is explained further:

> WhiteCell has made clear to Trend Micro that it has no rights in the '744 patent following the assignment to Fortinet, but Trend Micro still wants the license in case ownership of the '744 patent reverts from Fortinet to WhiteCell at some point in the future, which it will not, as Fortinet has no intention to return any rights in the '744 patent to WhiteCell.

The email also confirms that WhiteCell will forward the draft license agreement to Fortinet for review so that Fortinet can make sure it does not "derogate" Fortinet's rights in the '744 patent and can evaluate whether it "resolves the Court's concern regarding any collusion" (Bright Exh. N). Trend Micro rests its argument on the mere fact that Fortinet took an interest in the settlement agreement between WhiteCell and Trend Micro. The plain and repetitive language of the email, however, makes clear that Fortinet believes WhiteCell has no rights in the '744 patent. This single email does not support Trend Micro's elaborate theory.

7

In short, Trend Micro has not met its burden of proving that a justiciable controversy exists between itself and either Fortinet or WhiteCell. After completing jurisdictional discovery, Trend Micro has confirmed that Fortinet acquired the '744 patent and is protecting the ability to assert it against Trend Micro. Trend Micro, however, has not established that Fortinet has taken any affirmative step toward doing so or that Fortinet is likely to do so unprovoked. Trend Micro also has not established what the Court suspected when jurisdictional discovery was allowed — that the transaction through which Fortinet acquired the '744 patent was a collusive ploy to skirt jurisdiction. Accordingly, this order finds that Trend Micro has failed to identify a "substantial controversy" between itself and Fortinet or WhiteCell "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

## CONCLUSION

For the foregoing reasons, Fortinet's motion to dismiss the action is **GRANTED**. Judgment shall be entered accordingly. WhiteCell's motion for leave to join Fortinet's combined reply brief and response to Trend Micro's attempt to show cause is **DENIED AS MOOT**. The briefing being exhaustive and sufficient, the oral argument on Fortinet's motion set for February 17, 2011, is **VACATED**.

**IT IS SO ORDERED.**

Dated: February 8, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE